ORIGINAL

FILED-USDC-NDTX-DA
'25 MAR 31 AM11:22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:24-CR-049-S |
| BARRY WEINSTEIN (08) | |

SUPERSEDING INFORMATION

The Acting United States Attorney Charges:

Introduction

1.  Physicians, marketers, pharmacists, and health care executives know and understand that pharmacies and their associated business entities cannot legally pay bribes and kickbacks to physicians in return for prescriptions fillable at those pharmacies.

Texas Commercial Bribery Statute

2.  Under Texas Penal Code Section 32.43, which outlaws commercial bribery, a physician owes a fiduciary duty to his or her patients and commits an offense if, without the consent of his or her patients, intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the physician in relation to the affairs of his or her patients. Likewise, a non-physician violates the Texas Commercial Bribery Statute if he or she offers, confers, or agrees to confer any benefit, the acceptance of which by the physician is an offense.

### Texas Anti-Patient Solicitation Act

3. Under Texas Occupations Code Section 102.001(a), which outlaws accepting money for patient referrals, a person commits an offense if the person knowingly offers to pay or agrees to accept, directly or indirectly, overtly or covertly any remuneration in cash or in kind to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency. It is therefore clear under these two provisions of Texas law that it is illegal for pharmacies to buy prescriptions from physicians. Likewise, it is illegal for physicians to sell their prescriptions to pharmacies.

### Overall Scheme

4. Through various entities and individuals, pharmacies paid referring physicians in return for referring or directing profitable prescriptions to be filled at those pharmacies. This scheme resulted in pharmacies identifying profitable prescriptions; recruiting doctors to write those prescriptions; doctors referring prescriptions to those pharmacies in return for a share of the profits on those prescriptions; the pharmacies tracking each prescription by doctor by profit; and then pharmacies illegally paying the doctors through various business arrangements designed to conceal and disguise the nature of the payments.

### Altus/Pharma Select (2017 – 2019)

5. Vinson Woodlee, and his company, Med Left, LLC, operated several Management Support Organizations (MSOs), more fully described below, which were

Superseding Information - Page 2 of 10

used to funnel bribes and kickbacks from pharmacies to physicians. Despite their name, these entities did not provide any real services. Instead, Woodlee used these MSOs and Med Left to conceal bribes and kickbacks that Altus, described next, paid to referring physicians. Unless otherwise noted, references to Woodlee or Med Left are used interchangeably herein.

6. Trinity Champion Healthcare Partners, LLC (Trinity Champion) was an MSO that was used to funnel bribes and kickbacks from pharmacies to physicians.

7. **Defendant Barry Weinstein** was a licensed medical doctor who practiced medicine in Texas. As a physician, **Weinstein** owed a fiduciary duty to his patients under Texas law and owed his patients a duty of honest services. **Weinstein** wrote prescriptions for his patients to Parkwood and Pharma Select, that were tainted by illegal bribes and kickbacks.

8. Robert Leisten was a licensed medical doctor who practiced medicine in Texas. As a physician, Leisten owed a fiduciary duty to his patients under Texas law and owed his patients a duty of honest services. Leisten wrote prescriptions for his patients to multiple pharmacies including Pharma Select, that were tainted by illegal bribes and kickbacks.

9. Amy Haase was a licensed medical doctor who practiced medicine in Texas. As a physician, Haase owed a fiduciary duty to her patients under Texas law and owed her patients a duty of honest services. Haase wrote prescriptions for her patients to

multiple pharmacies including Pharma Select that were tainted by illegal bribes and kickbacks.

10. Arnold Farbstein was a licensed medical doctor who practiced medicine in Texas. As a physician, Farbstein owed a fiduciary duty to his patients under Texas law and owed his patients a duty of honest services. Farbstein wrote prescriptions for his patients to multiple pharmacies including Pharma Select, that were tainted by illegal bribes and kickbacks.

11. Eric Berkman was a licensed medical doctor who practiced medicine in Texas. As a physician, Berkman owed a fiduciary duty to his patients under Texas law and owed his patients a duty of honest services. Berkman wrote prescriptions for his patients to multiple pharmacies including Pharma Select, that were tainted by illegal bribes and kickbacks.

12. Jorge Cuza was a licensed medical doctor who practiced medicine in Texas. As a physician, Cuza owed a fiduciary duty to his patients under Texas law and owed his patients a duty of honest services. Cuza wrote prescriptions for his patients to multiple pharmacies including Pharma Select, that were tainted by illegal bribes and kickbacks.

Count One
Conspiracy to Violate the Travel Act by violating the
Texas Commercial Bribery Statute
(18 U.S.C. § 371 (18 U.S.C. § 1952))

13. The preceding paragraphs of this Superseding Information are incorporated herein as if fully set forth herein.

14. From on or about February 1, 2017, through at least October 2019, in the Northern District of Texas and elsewhere, Defendant **Barry Weinstein,** along with Amir Mortazavi, Arvin Zeinali, Trinity Champion Healthcare Partners, LLC, Robert Leisten, Amy Haase, Arnold Farbstein, Eric Berkman, and Jorge Cuza, knowingly and willfully conspired, confederated, and agreed with Vinson Woodlee, and with each other, and with others known and unknown, to violate 18 U.S.C. § 1952 (a)(1) and (a)(3); by using and causing to be used facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, specifically, Commercial Bribery in violation of Texas Penal Code § 32.43, and, thereafter, to perform and attempt to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity.

<u>Purpose and Object of the Conspiracy</u>

15. It was a purpose and object of the conspiracy to illegally generate large sums of money for the defendants and their co-conspirators by exchanging concealed bribes and kickbacks for referrals of profitable prescriptions.

<u>Manner and Means of the Conspiracy</u>

16. The manner and means by which the defendants and others sought to accomplish the object of the conspiracy included, among other things, the following:

a. It was part of the conspiracy that, from in or about February 2017 through in or about October 2019, bribes and kickbacks were paid to referring physicians under the guise that the bribes and kickbacks were legitimate returns on investment in MSOs. Generally speaking, the physicians would write prescriptions to Parkwood or Pharma Select (sometimes referred to as Altus); Parkwood or Pharma Select would fill the prescriptions and split net proceeds with the physicians. Since the pharmacies could not pay the physicians directly, the physician's share of the profits was funneled through multiple entities including MSOs. In reality, (1) physician ownership in MSOs required referrals, (2) ownership was offered for a nominal fee, (3) physician's individual shares in an MSO were based upon volume of referrals; and (4) 100% of MSO revenues were generated by prescriptions written by physician owners.

b. Leisten, Haase, Farbstein, **Weinstein,** Berkman, and Cuza were paid through Trinity Champion Healthcare Partners, LLC. Raintree Healthcare Partners, an entity controlled by Leisten, "owned" all the physician shares in Trinity Champion. Thus, in exchange for Leisten, Haase, Farbstein, **Weinstein,** Berkman, and Cuza referring prescriptions to Parkwood or Pharma Select: (i) Parkwood or Pharma Select funneled kickback payments to Med Left; (ii) Med Left paid Trinity Champion; (iii) Trinity Champion paid Raintree; and (iv) Leisten paid Haase, Farbstein, **Weinstein,** Berkman, Cuza, and himself from Raintree.

c. At all relevant times it was a part of this conspiracy that the prescriptions were submitted to Parkwood and Altus pharmacies through electronic wire communications

including the use of facsimile machines. The filled prescriptions were then usually shipped by United States mail or interstate commercial carriers to the patients. Parkwood and Altus used various means of electronic communications to bill private and government pay insurance providers for these prescriptions. Parkwood and Altus then distributed the funds generated by the scheme to invested physicians or intermediaries through various electronic means including ACH deposits and, in some instances, paper checks.

## Overt Acts

17. In furtherance of the conspiracy, and to accomplish its object and purposes, Mortazavi, Zeinali, Trinity Champion, Leisten, Haase, Farbstein, Weinstein, Berkman, and Cuza, committed and caused to be committed, in the Northern District of Texas and elsewhere, the following overt acts, among others:

    a. On or May 26, 2017, Parkwood prepared a report reflecting the status of prescriptions submitted and included the categories of "Filled," "On hold," "Cash," and "Grand Total" for, among other doctors, Leisten, Haase, Farbstein, **Weinstein,** Berkman, and Cuza.

    b. On or about September 1, 2017, Altus agreed to pay 55% of net profits to Leisten, Haase, Farbstein, **Weinstein**, Berkman, and Cuza for their prescriptions filled at Altus.

c. On or about January 8, 2018, Leisten sent an email to a known individual seeking an Altus Pharmacy report that included "COGs, Amount paid and profit."

d. On or about January 26, 2018, Leisten sent an email to a Med Left employee regarding the December payment to Trinity Champion. Leisten asked specifically, "When you report total income is $92041.58 (55%) Does that mean Altus collected $167348.38 on our doctors?"

e. On or about January 31, 2018, a known Med Left employee sent Leisten an email that walked him through the financials for Trinity Champion for December 2017, informing Leisten that Altus received $331,342.35 from insurance companies for prescriptions filled there in December. The cost to Altus to fill those prescriptions was $163,994.02, which was deducted from the total received, leaving a net collected number of $167,348.33. The amount paid to Med Left is 55% of net proceeds [$92,041.58], and 100% of that money is paid from Med Left to the MSO.

f. On or about February 6, 2018, Leisten emailed Haase, Farbstein, **Weinstein,** Berkman, and Cuza and informed them: "Beware of Bogus Script Pads - I have been informed today that our old "friends" at Parkwood Pharmacy are sending out new prescription pads to our offices in hope that we accidentally send them our prescriptions. Please note that all our prescriptions should be faxed to Pharma-Select at 832 324-3993. Let me know if you have any questions or concerns."

g. On or about May 22, 2018, Zeinali, Leisten, **Weinstein,** Cuza, Trinity Champion, and others known to the grand jury met at a dinner to discuss, among other things, switching their MSO structure, agreeing that all doctors in Trinity Champion would receive a weekly report for scripts submitted the previous week, and ensuring that each doctor had the latest "script pad."

h. On or about August 27, 2018, a "MEDLEFT REPORT ONLY" spreadsheet was sent from Altus to Med left. It contained month-to-date prescriptions for among others, "Woodlee1" doctors Cuza, Farbstein, Haase, Leisten, and **Weinstein.** The report tracked each doctor by patient, number of prescriptions filled, sum of monies due from insurance companies, sum of cost to fill each prescription, and sum of net.

i. On or about August 29, 2018, in a series of emails, an unindicted co-conspirator paid through Trinity Champion and Raintree**,** questioned an employee of Med Left about which prescriptions sent to Pharma Select were more profitable – creams or oral Naproxyn which is what that doctor had been prescribing for his patients. Ultimately, this unindicted co-conspirator concluded "no wonder I see these insane number of rx for some of the docs. I have been using a fair amount of the Naproxyn but will focus on the creams going forward."

j. On or about October 11, 2018, an Altus employee sent a commission summary for the month of August to a Med Left employee. It reflected, among other things, that Cuza, **Weinstein,** Haase, Berkman, Leisten, and Farbstein were paid 55% of net revenue on their prescriptions.

      k.      On or about June 26, 2019, Leisten asked a Med Left employee "when can we expect the May report and funding?"

      l.      On or about July 1, 2019, an employee of Altus sent a "MEDLEFT REPORT ONLY" spreadsheet to a Med Left employee. It contained June month-to-date prescriptions for among others, "Woodlee1" doctors Cuza, Farbstein, Haase, Leisten, and **Weinstein.** The report tracked each doctor by patient, number of prescriptions filled, sum of monies due from insurance companies, sum of cost to fill the prescription, and sum of net.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 1952).

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

*/signature/*

_____
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
DONNA MAX
Texas Bar No. 24041984
Email: donna.max@usa.doj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809